**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0343n.06

No. 09-6177

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 20, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| GORDON POWELL, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

Before: MOORE and WHITE, Circuit Judges, and VARLAN, District Judge.[*]

**THOMAS A. VARLAN, District Judge.** Gordon Powell ("Powell") pled guilty to the offense of devising and intending to devise a scheme and artifice to defraud, namely, a scheme to defraud a person over whom he had a fiduciary responsibility, for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations, and promises. The district court sentenced Powell to thirty-six months of imprisonment, to be followed by two years of supervised release, and imposed upon Powell a $10,000 fine.

On appeal, Powell argues that (1) the district court erred in not considering relevant evidence at sentencing, namely, certain sealed state-court records, which he asserts would have shed light on the relationship between Powell and the victim and provided ample reason not to impose an upward variance from the Guidelines; (2) the thirty-six month sentence is substantively unreasonable given

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

the facts of the case as well as Powell's care for the victim, lack of criminal history, age, and likelihood of recidivism; and (3) there was no evidence to support the imposition of a $10,000 fine. We conclude that the district court did not err in declining to consider the sealed state-court records, that, under the totality of the circumstances, Powell's sentence is substantively reasonable, and that the district court did not err in imposing a $10,000 fine. Therefore, we **AFFIRM** the sentence imposed by the district court.

## I. BACKGROUND

### A. Factual Background

In 2004, Powell moved to Ludlow, Kentucky. An elderly woman, Faith Hunter ("Hunter"), lived down the street. Powell met Hunter and, after learning that Hunter had substantial wealth, he befriended her.

Shortly thereafter, Hunter came to live with Powell and his wife. Powell then prevailed upon Hunter to execute a Power of Attorney ("POA"), giving Powell authority over Hunter's financial affairs. Powell used the POA to liquidate some of Hunter's assets and caused a portion of the proceeds to be deposited into bank accounts held in the name of Powell and his wife. Powell used the funds for, among other things, paying personal obligations that were in no way related to Hunter.

### B. Procedural Background

On May 28, 2005, the government filed a one-count information against Powell in the United States District Court for the Eastern District of Kentucky, charging him with devising and intending to devise a scheme and artifice to defraud, namely, a scheme to defraud a person over whom he had

a fiduciary responsibility, for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations, and promises. On the same day, Powell appeared before the district court for his arraignment and plea. Pursuant to a written plea agreement, Powell entered a plea of guilty to the information. He was released on bond.

Powell subsequently appeared before the district court for sentencing. During the sentencing hearing, the government introduced evidence that attempted to show that Powell abused his position of trust with Hunter and that he mistreated Hunter. In particular, the government introduced the testimony of Hunter's caretaker, Jennifer Noe ("Noe"), who testified that Powell physically abused and neglected Hunter, who suffered from dementia. Noe testified that Hunter's living space in Powell's home consisted of a single, basement room with one small window and a door that locked from the outside, and that Hunter was kept almost exclusively in her room, was not allowed outdoors, and was not allowed to attend worship services. Noe further testified that Powell refused to allow Noe to purchase proper clothing for Hunter or allow Hunter to receive medical treatment despite pleas from Noe that Hunter's condition was worsening.

The government also introduced the testimony of Brian Huenefeld ("Huenefeld"), a postal inspector with the United States Postal Inspection Service, who initiated an investigation of Powell. Huenefeld testified that he conducted a financial analysis of Powell's bank accounts, and that after the POA was executed, six accounts were opened by Powell: three in the name of Powell and Hunter and three in the name of Powell and his wife. He further testified that when Hunter's assets were liquidated, $275,000 out of $600,000 was transferred into accounts held by Powell and his wife, and

used for their benefit. Huenefeld also testified that, during the course of his investigation, he learned about Powell's abuse of Hunter, including that Powell did not allow Hunter outside and did not allow Hunter to receive medical care. Last, he testified that his investigation revealed that funds from one of Powell's personal accounts were used to pay an attorney to determine Hunter's competency to execute documents pertaining to her estate.

Although Powell cross-examined Noe and Huenefeld, Powell did not present any witnesses of his own. Powell also did not address the court himself. Rather, Powell's attorney informed the court that he would be speaking for Powell.

Near the end of the sentencing hearing, the district court informed the parties that the court had received certain sealed state-court records and that the court was unaware of who had caused the records to be submitted, what the records were, or why they were directed to the court. Powell's attorney responded that he had directed the records to the district court and that, although he had "no idea what the contents were," he "got the impression that it was information that would be pertinent to [the sentencing] hearing." Sent. Tr. at 53. The district court declined to review the sealed state-court records, explaining that it was "not going to consider the contents of what's been forwarded if neither side had reviewed it." *Id.* at 53-54. The government indicated that it was "agreeable" to the district court's course of action; neither Powell nor his attorney commented on the matter. *Id.* at 54. The district court then stated that it would place the materials in the record.

Although Powell's Guidelines range was twenty-one to twenty-seven months' imprisonment, the district court sentenced Powell to a term of imprisonment of thirty-six months, to be followed

4

by two years of supervised release. The district court also imposed upon Powell a $10,000 fine,

which was within the Guidelines range of $6,000 to $60,000.

## II. ANALYSIS

**A. The District Court's Failure to Consider the Sealed State-Court Records**

The government argues that Powell waived his argument that the district court erred in

declining to consider the sealed state-court records because he remained silent after the district court

informed the parties that it was not going to consider the records and the government agreed to that

course. Powell counters that he did not waive this argument because "[a]t no time did counsel

indicate that he did not want the court to consider the documentation, or that he was withdrawing

it from consideration." Reply. Br. 1.

During sentencing, the district court had the following exchange with Mr. Hellings, counsel

for Powell, and Mr. Dusing, counsel for the government, regarding the sealed state-court records:

> THE COURT: All right. One question, Counsel, before we proceed with allocution.
> Someone asked that certain records from the Kenton Circuit Court be directed to me.
> I'm not sure who did that –
> MR. HELLINGS: Judge, that was my --
> THE COURT: -- or the reason for it. I'm sorry?
> MR. HELLINGS: I did that. If I could give the Court some background?
> THE COURT: Yes, sir.
> MR. HELLINGS: Judge, what happened was this case initially started as a state court
> action, and I had heard, based upon conversations with my clients, about this
> conversation with Ms. Hunter and Ms. Davis. I attempted to get that conversation.
> Ms. Davis claimed privilege. Judge Sheehan, the circuit judge who had the case,
> ordered the matter be transcribed and sealed and put in his chambers. The case was
> ultimately dismissed, it's been sitting there, I have no idea what the contents were,
> but I got the impression that it was information that would be pertinent to this
> hearing. I don't know what Ms. Hunter said or didn't say, so that's why it was
> brought to the Court's attention.

5

> THE COURT: All right. So at this point, neither of the attorneys have reviewed what was forwarded to me by the Kenton Circuit Court; is that correct?
> MR. HELLINGS: As an officer of the Court, I have not.
> MR. DUSING: I have not, Your Honor.
> THE COURT: Okay. I'm not going to consider it unless both sides have reviewed that.
> MR. DUSING: I would be agreeable to that.
> THE COURT: It will not be considered. So I will – I'm going to give a copy to the Clerk so it can be put in the record, but I'm not going to consider the contents of what's been forwarded if neither side has reviewed it. All right. Thank you. Let's proceed with allocution in the case. I'll hear first from Mr. Hellings and also from Mr. Powell, if he would like to address the Court, and then I'll hear from Mr. Dusing.

Sent. Tr. at 57-58.

Powell and his attorney did not object after the district court informed the parties that it would not be considering the sealed state-court records. Indeed, despite the opportunity to do so, at no point during the sentencing hearing did Powell or his attorney take issue with the district court's decision not to consider the records. It does not appear from the record, however, that Powell took "affirmative steps to voluntarily waive his claim," or "intentionally relinquishe[d] or abandon[ed] a known right." *United States v. Graham*, 622 F.3d 445, 455 n.9 (6th Cir. 2009) (citing *United States v. Goodman*, 519 F.3d 310, 319 (6th Cir. 2008)) (internal quotation marks omitted). Accordingly, we construe his arguments as forfeited rather than waived, and review for plain error. *See id.*; *see also United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (noting that a party who fails to make an objection "forfeits the argument and may obtain relief on appeal only if the error is 'plain' and 'affects substantial rights'" (citing Fed. R. Crim. P. 52(b))); *United States v. Bailey*, 488 F.3d 363, 367-68 (6th Cir. 2007) (citation omitted).

To establish plain error, Powell must demonstrate "(1) error, (2) that is plain, and (3) that affect[s] substantial rights and that (4) the error seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Brock*, 501 F.3d 762, 773 (6th Cir. 2007) (citation and internal quotation marks omitted) (alterations in original). "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Krimsky*, 230 F.3d 855, 858 (6th Cir. 2000) (citation omitted). "Generally, an error does not affect substantial rights unless it is prejudicial—in other words, the error 'must have affected the outcome of the district court proceedings.'" *Bailey*, 488 F.3d at 368 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). "[O]nly in exceptional circumstances" will we find such error, and the error must be "so plain that the trial judge . . . [was] derelict in countenancing it." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (citation omitted).

On appeal, Powell sets forth three grounds in support of his contention that the district court erred in not considering the records: first, that the district court should have considered the records under 18 U.S.C. § 3661; second, that the district court could have considered the records under Rule 32 of the Federal Rules of Criminal Procedure because that rule affords defendants the right to present information in mitigation of punishment; and third, that the district court prevented Powell from meeting his burden of production as to mitigation.

With respect to Powell's argument that the district court should have reviewed the records because 18 U.S.C. § 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the

7

United States may receive and consider for the purpose of imposing an appropriate sentence," Powell

fails to point to any case in this Circuit or elsewhere that would have required the district court to

consider the records under the statute. Likewise, with respect to Powell's argument regarding Rule

32, Powell is correct that "Rule 32 'explicitly affords the defendant two rights: to make a statement

in his own behalf, and to present any information in mitigation of punishment.'" *United States v.*

*Sammons*, 918 F.2d 592, 604 (6th Cir. 1990) (citation and internal quotation marks omitted). If the

district court invites the defendant to speak, however, both rights are satisfied. *Id.* (citation omitted).

Here, the district court asked: "Would Mr. Powell like to address the Court?" and Powell's attorney

responded: "He does not, Judge. He asked me to speak for him." Sent. Tr. at 58. Finally, with

respect to Powell's argument that he was precluded from meeting his burden of production, Powell

was able to present the records to the district court and never objected to the district court not

considering the records. He also was afforded the opportunity to present witnesses and other

evidence, but he chose not to do so. Nor did Powell offer the records under either 18 U.S.C. § 3661

or Rule 32.

More pertinent to Powell's argument is "Federal Rule of Criminal Procedure 32(i)(1)(C)[,

which] states that, '[a]t sentencing, the court . . . must allow the parties' attorneys to comment on

the probation officer's determinations *and other matters relating to an appropriate sentence[.]*'"

*United States v. Bey*, 384 F. App'x 486, 490-91 (6th Cir. 2010) (emphasis and alteration in original).

The Sixth Circuit has "read Rule 32(i)(1)(C) to require advance notice of any evidence to be relied

upon at sentencing" because "when undisclosed evidence is factored into the sentencing calculus,

the parties are denied their opportunity to address information germane to the district court's ultimate decision." *Id.* at 491 (citing *United States v. Christman*, 509 F.3d 299, 304-09 (6th Cir. 2007); *United States v. Patrick*, 988 F.2d 641, 649 (6th Cir. 1993) (assessing whether a failure to disclose evidence deprived the defendant of "a sufficient opportunity to challenge [it]"); *United States v. Reynoso*, 254 F.3d 467, 473 (3d Cir. 2001) ("Were a court permitted to impose a sentence based in part on testimonial or other evidence from another proceeding not involving the defendant without giving the defendant and the Government advance notice, the defendant's right to comment meaningfully on all matters relevant to the sentence would be seriously compromised.")). Despite the preference for inclusion of information at sentencing, *see Bey*, 384 F. App'x at 490, had the district court relied on the sealed state-court records without a specific request to do so from the defendant after the court observed that neither party had reviewed them, the district court might have run afoul of Rule 32(i)(1)(C). Hence, we find the district court committed no error.

Even assuming that the district court committed error in not considering the records, Powell does not attempt to demonstrate that the failure affected the outcome of the sentencing hearing—he merely surmises that it would. And given the district court's conclusions about Powell's procurement of an attorney to determine the competency of Hunter to execute documents pertaining to her estate, it seems doubtful that the records, which transcribe that attorney's meeting with Hunter, would have affected Powell's sentence.[1]

---

[1]The interview transcript received on appeal appears incomplete. If the district court was provided an incomplete transcript as well, it seems all the more unlikely that it would have affected Powell's sentence.

Powell also argues that we should remand so that the district court may conduct an *in camera*

review of the records. In support of his argument, Powell relies on *Pennsylvania v. Ritchie*, 480 U.S.

39 (1987). The Sixth Circuit has summarized the portion of *Ritchie* upon which Powell relies as

follows:

> [A] defendant charged with sexually abusing his daughter sought access to her
> Children and Youth Services (CYS) records during pretrial discovery. The state
> refused access, and the defendant charged that the state thereby violated his Sixth
> Amendment rights because the records could contain exculpatory evidence or leads
> to favorable witnesses. The Supreme Court construed the defendant's challenge as
> a Fourteenth Amendment Due Process claim and applied the "clear framework" of
> *Brady* and its progeny to assess the fundamental fairness of the defendant's trial.
> There, the Court stated:
>
>> At this stage, of course, it is impossible to say whether any
>> information in the CYS records may be relevant to Ritchie's claim of
>> innocence, because neither the prosecution nor defense counsel has
>> seen the information, and the trial judge acknowledged that he had
>> not reviewed the full file. The Commonwealth, however, argues that
>> no materiality inquiry is required, because a statute renders the
>> contents of the file privileged.
>
> As a result, the Court found remand for *in camera* review of the file appropriate and
> necessary to the district court's "determin[ation] whether it contains information that
> probably would have changed the outcome of [the defendant's] trial." Notably, the
> Court did not hold that the government must give defense counsel unbridled access
> to the information; only that the court be permitted to examine it. Accordingly, once
> a defendant "establish[es] a basis for his claim that [the records sought] contain [ ]
> material evidence," even though he cannot articulate with specificity the materiality
> of those records, remand for *in camera* review may be appropriate.

*United States v. White*, 492 F.3d 380, 410 (6th Cir. 2007) (internal citations omitted) (alterations in

original) (remanding and ordering the district court to conduct an *in camera* review to determine

whether a *Brady* violation occurred).

Assuming *Ritchie* provides authority for us to order a remand for *in camera* review as Powell

suggests,[2] we decline to do so because Powell fails to establish a basis for his claim that the records

contain material evidence that would affect the outcome of sentencing. Powell states that the records

describe Hunter's circumstances and the relationship between Hunter and Powell. The record,

however, demonstrates that the district court considered information concerning Hunter's

circumstances and the relationship between Hunter and Powell from a variety of other sources, and,

as previously noted, it is doubtful that the records would have changed the sentence selected by the

district court.

In sum, we find that the district court did not commit plain error in not considering the sealed

state-court records, and we do not find it necessary to remand for *in camera* review of the records.

**B. Substantive Reasonableness of Powell's Sentence**

Powell argues that his sentence of thirty-six months of imprisonment, a sentence that exceeds

the top of the Guidelines range by nine months, is substantively unreasonable in light of the section

3553(a) factors. We review sentences imposed by the district court for reasonableness. *United*

*States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006) (citation omitted). A sentence outside the

Guidelines range "carries with it no legal presumption." *United States v. Vowell*, 516 F.3d 503, 509

(6th Cir. 2008) (citing *Rita v. United States*, 551 U.S. 338, 355 (2007)). Rather, "regardless of

---

[2]In discussing *Ritchie*, the Sixth Circuit noted that "sister circuits have signaled approval of remand for in camera proceedings to ascertain the materiality of the evidence sought in various circumstances." *White*, 492 F.3d at 410 n.14 (citations omitted). Those circumstances, however, are not factually similar to this case.

whether [a] sentence is within the Guidelines range or significantly outside it," we "must review every sentence that is free from procedural error under a deferential abuse-of-discretion standard." *Id.* at 509 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

"A sentence may be considered substantively unreasonable when the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors[,] or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Collington*, 461 F.3d at 808 (quoting *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)) (alterations in original). "We do not require a 'mechanical recitation of the § 3553(a) factors, but [we do require] 'an explanation of why the district court chose the sentence that it did.'" *Vowell*, 516 F.3d at 510 (citation omitted). When conducting our review, we take into account the "totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* at 510-11 (citation omitted).

In determining Powell's sentence, the district court first outlined some of the information it relied upon in fashioning Powell's sentence. As noted, it did not consider the sealed state-court records, but it did consider the sentencing memoranda, letters, materials attached to the sentencing memoranda, including an Adult Protective Services report, which the court found contained a considerable amount of hearsay but nonetheless was sufficiently reliable, and the testimony of Noe and Huenefeld.

The district court concluded that, although Powell's motives may have been altruistic to begin with, they "did not end up that way." Sent. Tr. at 66. In particular, the district court found that

Powell assisted Hunter with her dementia at first, but after learning she had substantial assets, he exploited the situation and used a substantial portion of her assets for his own benefit. The district court also determined that Powell neglected and abused Hunter, and found that there was "a reason" he paid an attorney to determine the competency of Hunter. *Id.* at 43-47, 67.

In analyzing the section 3553(a) factors, the district court declared that this was a "tragic case." *Id.* at 68. Although Powell did not have any criminal-history points, the district court noted that neither "his history [nor] his characteristics are something that I would be proud of if I were either him or a member of his family or a member of his church," and the court compared Powell's actions to the abuse of a small child. *Id.* at 68. The district court stressed that it needed to impose a sentence to provide adequate deterrence to Powell, but also to "others that might be inclined to engage in this conduct in the hopes of receiving a windfall under a will," and that a within-Guidelines sentence would not be sufficient to do that. *Id.* at 67-68. The district court further considered the need to avoid unwarranted sentencing disparities, and found that the court had "not run into a case that's similar to this in which an old person—an elderly person suffering from some degree of dementia has been abused to the extent that this lady was abused and exploited. So there's really no one to compare the situation with." *Id.* at 70.

Despite the district court's analysis, Powell asserts three reasons why his sentence is substantively unreasonable. First, he argues that the district court did not consider the following mitigating factors: Powell's family circumstances and support; the support of Powell's friends despite their knowledge of the offense; that Powell would have received the funds in any event under

the will; and Powell's lack of criminal history and employment record. Second, Powell argues that he did not exploit Hunter, as the evidence showed that he "fed her, clothed her, and provided warm comfortable shelter for her for her remaining years." Appellant Br. 15-16. Finally, Powell argues that the district court's use of the deterrence factor to increase Powell's sentence was improper because Powell "was not likely to recidivate in the future" given that his criminal history category was I and he was forty-six at the time of sentencing. *Id.* at 16.

The district court did not abuse its discretion. As discussed, the district court considered the section 3553(a) factors, and did so in more than a cursory fashion. The district court also considered Powell's family circumstances and the support of his friends and family, as well as Powell's criminal history and employment record. The district court further considered Powell's assertion that he would have taken under the will and concluded that there were questions surrounding the method by which the will was procured, including that Powell paid an attorney to determine Hunter's competency. Moreover, the district court considered Powell's contention that he did not exploit Hunter but found that Powell's intentions, which may have been "altruistic" to begin with, did not end that way. Sent. Tr. at 66. The district court also did not consider the deterrence factor solely as to Powell, as Powell suggests, but considered general deterrence, which is appropriate under section 3553(a). In addition, a review of the record indicates that the district court did not give any factor any more weight than it did others. Instead, the district court fashioned Powell's sentence based on the totality of the circumstances and varied upward by nine months.

We must give "due deference to the [d]istrict [c]ourt's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Vowell*, 516 F.3d at 512 (citing *Gall*, 552 U.S. at 59-60) (alterations in original). Accordingly, and in light of the discussion herein, we find the district court's sentence of thirty-six months of imprisonment substantively reasonable.

## C. Imposition of a $10,000 Fine

Powell argues that the district court erred in imposing a fine because the Presentence Investigation Report ("PSR") indicated that he could not pay a fine either presently or in the future. Although Powell argues that we must review the imposition of the fine for abuse of discretion, a district court's finding regarding whether a defendant is able to pay a fine is a factual finding that we review for clear error. *United States v. Thomas*, 272 F. App'x 479, 489 (6th Cir. 2008) (citing *United States v. Hickey*, 917 F.3d 901, 906 (6th Cir. 1990)).

Section 5E1.2 of the Guidelines states that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S. Sentencing Guidelines Manual § 5E1.2(a). "In determining the ability of a defendant to pay the fine, the district court must assess '(1) the defendant's income and earning capacity, (2) [his] financial resources, (3) the burden on the defendant and [his] dependents, (4) whether restitution is ordered and the amount of restitution, (5) the need to deprive the defendant of illegal gains, and (6) the need to promote respect for the law.'" *Id.* at 489 (citing *United States v. Jackson-Randolph*, 282 F.3d 369, 387 (6th Cir. 2002)). Although "[t]he Sixth Circuit has not resolved the question of whether the district court must make explicit findings on the record

regarding its consideration of these factors," *id.* (citation omitted), we have indicated that detailed findings are not necessary where it can be inferred that the district court considered the defendant's ability to pay and other factors required by law, *see United States v. Tosca*, 18 F.3d 1352, 1354-55 (6th Cir. 1994).

> In determining that a fine should be imposed upon Powell, the district court stated:

> I also believe that a fine is appropriate in this particular case. If, as has been represented to the Court, and I have no reason to doubt that, the Powells did receive the benefit or assets from the will and testament of Ms. Hunter, then in those circumstances there are certainly sufficient funds that would allow payment of a fine in this particular case. I do believe justice demands it.

> . . . .

> He will be fined in the amount of $10,000 for the reasons I previously stated[.]

Sent. Tr. at 69-70, 71.

On appeal, Powell argues that he did not, in fact, benefit from Hunter's will and that there was no evidence of payments from the will in the PSR report. He accordingly submits that there was no evidence to support the contention that Powell actually received funds from probate. Powell further argues that the PSR indicated that he had no real estate, cars, or financial assets and had medical bills and credit card debt totaling around $10,000, as well as that he was forty-six years old at the time of sentencing, had no GED, had had his vehicle and house seized and forfeited as part of the case, and was facing a lengthy prison sentence.

Despite Powell's arguments, evidence presented during sentencing established that Powell diverted approximately $275,000 of Ms. Hunter's money to himself, and Powell's attorney argued

that the Powells were to receive Hunter's estate. Powell has the burden of establishing that he is

unable to pay a fine, *Hickey*, 917 F.2d at 907 (citations omitted), and the record indicates that Powell

did not put forth evidence at sentencing that suggested he could not pay a fine or become able to pay

a fine. Indeed, during sentencing, the government requested that the district court consider imposing

a fine based upon the fact that the defendant took under Hunter's will and Powell never objected or

attempted to inform the district court otherwise. Although Powell makes much of the fact that the

PSR indicated that Powell did not have the ability to pay the fine, the district court "was not

obligated to accept the presentence report recommendation." *United States v. Londono-Mejia*, 86

F. App'x 825, 826 (6th Cir. 2004).

Accordingly, we find that the district court's conclusion that Powell could pay a $10,000 fine,

a fine at the low end of the Guidelines range, was not clearly erroneous.

### III. CONCLUSION

For the reasons explained above, we **AFFIRM** the sentence imposed by the district court.