**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0568n.06

Case No. 19-6345

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Oct 06, 2020

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) | |
| ALBERTO LOPEZ PANIAGUA, | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

**BEFORE: COLE, Chief Judge; McKEAGUE and WHITE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** After assisting a large drug-trafficking organization with transporting drug money into and out of the United States for years, Alberto Lopez Paniagua was arrested and indicted for conspiracy to commit money laundering. Lopez Paniagua admitted to his role in this conspiracy, pled guilty, and was sentenced to 130 months in prison. He claims various procedural errors in the district court's sentencing decision and also argues that the district court abused its discretion in fining him $3,000.

We find these arguments to be without merit and **AFFIRM** Lopez Paniagua's sentence.

**I**

During an investigation into a large drug-trafficking organization, the DEA learned that Lopez Paniagua would be transporting drug proceeds between Ohio and Kentucky. After further investigation, the DEA concluded that Lopez Paniagua had been involved in money laundering since at least 2014. A tip from a confidential informant led to a traffic stop and Lopez Paniagua's arrest, where the police recovered $173,480 in currency.

But Lopez Paniagua's involvement in the drug-trafficking organization was far more involved than that. After pleading guilty to conspiracy to commit money laundering, Lopez Paniagua admitted to promoting and concealing drug-trafficking activity, brokering agreements on behalf of the organization, and collecting and transferring proceeds from the United States to Mexico for nearly two years. During 2017 and 2018, Lopez Paniagua was involved in the transfer of over $1.5 million in drug proceeds.

For this conduct, Lopez Paniagua's Sentencing Guidelines range was 108 to 135 months and the recommended fine ranged between $30,000 and $3,003,080. At a sentencing hearing on November 22, 2019, the district court sentenced Lopez Paniagua to 130 months' imprisonment and imposed a fine of $3,000, one-tenth of the minimum Guidelines-recommended amount. Lopez Paniagua did not object to his fine or sentence at the sentencing hearing.

This appeal followed.

**II**

A. *Procedural Error*

We review sentences for an abuse of discretion, regardless of whether they are within or outside of the advisory Guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007). Additionally, "we review the district court's factual findings for clear error and its legal

conclusions de novo." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). After announcing its sentence, a district court must "ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). If a defendant does not raise a procedural objection at that time, the claim is reviewed only for plain error. *Id.* at 872–73; *see also United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009).

Here, Lopez Paniagua raises three challenges to the district court's sentence: 1) he claims that the district court improperly relied upon his likelihood to recidivate based on his age and involvement with organized crime, 2) he claims that the district court improperly considered facts outside the record, and 3) he claims that the district court failed to identify aggravating factors in explaining its sentence. All of these arguments challenge the procedural reasonableness of Lopez Paniagua's sentence, and Lopez Paniagua made none of them at the sentencing hearing below. Therefore, we review all of them for plain error. *See Bostic*, 371 F.3d at 872.

The first stage of review focuses on the procedure that the district court followed. We determine whether the sentence was procedurally reasonable by examining whether "the trial court follow[ed] proper procedures and [gave] adequate consideration to [the 18 U.S.C. § 3553(a)] factors." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020)). Procedural reasonableness focuses on "the propriety of the factors that go into a sentence." *Id.*

First, Lopez Paniagua claims that the district court relied on a clearly erroneous fact that "individuals involved in cartel activity were more likely to recidivate despite being over 65 years of age." In Lopez Paniagua's sentencing memorandum, he noted a publication by the United States Sentencing Commission that discussed aging and recidivism for federal offenders. In considering

this material, the district court stated that "an individual that's older . . . is less likely, statistically, to engage in criminal conduct" while also speculating "[t]hat may not be the case for individuals that are engaged in organized criminal activity." There is no indication in the record that this passing remark had any impact on the district court's sentencing decision. Indeed, the court specifically identified Lopez Paniagua's age as a mitigating factor. Thus, no plain error occurred here.

Second, Lopez Paniagua claims that the district court relied on information from the government that was outside the record. Not so. The district court properly considered information from the presentence report as well as the plea agreement and remained "free to make reasonable inferences from facts in the record when fashioning a sentence." *Parrish*, 915 F.3d at 1048. Here, the presentence report and plea agreement both clearly show that Lopez Paniagua's "primary role in the conspiracy was to broker agreements on behalf of the Drug Trafficking and Money Laundering Organization (DTMLO) to collect drug proceeds in the United States." The government's discussion of Lopez Paniagua's involvement with the drug trafficking organization was foreseeable and permissible argument from the record, and the district court's stray remark that "[i]t's for another day to decide how high the defendant was within the organization itself" is far too thin of a reed to claim the court improperly relied on extra-record evidence. To the extent that the district court relied on information not from the record, the court clarified that it was considered only "as it relate[d] to the length of the conspiracy that" was outlined in the record documents and "only . . . for that purpose." So, no plain error occurred.

Finally, Lopez Paniagua claims that the district court failed to sufficiently explain the aggravating factors used in deciding his sentence. But the transcript reveals precisely the opposite. The district court discussed "the seriousness of this particular offense," the "connection with . . .

organized criminal activity," the amount of money "in excess of $1.5 million," and the "dangerous and deadly" effects of white collar crime in connection with drug trafficking organizations. And an explanation for a within-Guidelines sentence like this one "need not be lengthy." *United States v. Wilms*, 495 F.3d 277, 280 (6th Cir. 2007) (citing *Rita v. United States*, 551 U.S. 338, 356–57 (2007)). Here, the explanation was more than sufficient to satisfy plain-error review.

B. *Lopez Paniagua's Fine*

At sentencing, the court must impose a fine in all cases where the defendant has not shown "that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). In deciding whether to impose a fine, and the amount of that fine, the district court must assess "(1) the defendant's income and earning capacity, (2) [his] financial resources, (3) the burden on the defendant and [his] dependents, (4) whether restitution is ordered and the amount of restitution, (5) the need to deprive the defendant of illegal gains, and (6) the need to promote respect for the law." *United States v. Jackson-Randolph*, 282 F.3d 369, 387 (6th Cir. 2002). But detailed findings regarding the above factors are unnecessary "where it can be inferred that the district court considered the defendant's ability to pay and other factors required by law." *United States v. Lumbard*, 706 F.3d 716, 726 (6th Cir. 2013) (quoting *United States v. Powell*, 423 F. App'x 602, 610–11 (6th Cir. 2011)). "The burden of showing that a defendant is unable to pay a fine rests ultimately on the defendant." *United States v. Lantz*, 443 F. App'x 135, 146 (6th Cir. 2011). We review the district court's imposition of a fine for an abuse of discretion. *United States v. Blackwell*, 459 F.3d 739, 770 (6th Cir. 2006). Finally, "the district court's determination regarding the defendant's ability to pay a fine is a factual finding that is subject to clear error review." *United States v. May*, 430 F. App'x 520, 527 (6th Cir. 2011).

Lopez Paniagua was ordered to pay a fine of $3,000, a mere one-tenth of the bottom of the Guidelines-recommended amount of $30,000. In arguing that this was an abuse of discretion, Lopez Paniagua relies heavily on the presentence report, which noted his net worth at the time of sentencing was $3,300 and his monthly cash flow was negative $370. However, more must be considered than the defendant's present net worth. *See United States v. Stone*, 218 F. App'x 425, 440 (6th Cir. 2007) ("Current assets are not determinative of an ability to pay a fine."). The report did not address future inability to pay while incarcerated, and the burden of showing an inability to pay rested with Lopez Paniagua, not the government. The court expressed that Lopez Paniagua "would be able to pay that amount through the Bureau of Prisons Inmate Responsibility Program." Indeed, Lopez Paniagua will be able to pay in installments with prisoner wages while incarcerated and could also make further payments upon release. *See United States v. Sydnor*, 762 F. App'x 284, 287 (6th Cir. 2019). At the sentencing hearing, Lopez Paniagua did not offer any reason as to why he would not be able to pay a fine that was only one-tenth of the Guideline-recommended range. Accordingly, there was no abuse of discretion in the imposition of a fine here.

**III**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.