# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2909

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Salvador E. Retana, also known as | * | |
| Salvador E. Retana-Lopez, also known | * | |
| as Salvador E. Lopez-Retana, also | * | |
| known as Salvador E. Lopez, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: April 12, 2011
Filed: June 7, 2011

_____

Before WOLLMAN and MELLOY, Circuit Judges, and MILLER,[1] District Judge.

_____

MELLOY, Circuit Judge.

Salvador E. Retana appeals his conviction for aggravated identity theft. 18 U.S.C. § 1028A(a)(1). Retana admits that he used his father's social security number "during and in relation to" the commission of other crimes, and the government does not dispute the fact that Retana's father gave Retana permission to use the social

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas, sitting by designation.

security number. Id. In light of the father's permission, Retana argues that the government failed to prove an element of the offense, namely, that the use was "without lawful authority." Id. Because we agree with the district court[2] that the father's permission does not amount to "lawful authority" we affirm the judgment of the district court.

I.

Defendant Retana fraudulently used his father's social security number as though it were his own to form a construction business, open an account with Bank of America, and file certain tax papers. He used his father's number to open the bank account because he owed money and did not want other banks recovering funds from accounts bearing his real social security number. Ultimately, through his construction business, he paid cash wages below the applicable prevailing rate on a federal government project, failed to pay unemployment insurance, employed illegal aliens, and submitted false payrolls to the Department of the Navy. He eventually received approximately $440,000 for work performed on the government project and paid substantially less than this amount to workers (with many payments made as unreported cash payments). Investigators were unable to account for over half of the $440,000.

These activities eventually led to charges against Retana for multiple offenses including one count of theft of government money, 18 U.S.C. § 641; one count of theft from a program receiving federal funds, 18 U.S.C. § 666; three counts of making materially false statements, 18 U.S.C. § 1001; and one count of aggravated identity theft, 18 U.S.C. § 1028A. He pleaded guilty to all counts other than aggravated identity theft, an offense that carries a mandatory, consecutive two-year term of

---

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

incarceration. See 18 U.S.C. § 1028A(b)(2). As to this remaining count, he admitted all elements of the offense except one: the requirement that his use of "the means of identification of another person" be "without lawful permission." As to this element, the record is undisputed: he obtained permission from his father to use the father's social security number.

Retana then waived his right to a jury trial and proceeded with a bench trial. The district court held that use of the father's means of identification was without lawful authority and found Retana guilty of aggravated identify theft. Retana appeals.

II.

The statutory text of the offense at issue, "Aggravated identity theft," provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1).

On one level, Retana's argument is simplistic: he had his father's permission and, therefore, did not commit the "theft" of any person's identity. Retana's argument is based on the title of the offense and on the assumption that "lawful authority" means merely permission from the person identified by the means of identification at issue in the case. We reject this argument because § 1028A(a)(1) employs the term "lawful authority" rather than the term "permission" and because the statute is broader than mere theft; the text of § 1028A(a)(1) encompasses "transfer[], possess[ion], or use[] without lawful authority." In addition to citing the title of the offense, Retana cites passages of legislative history that he claims support his interpretation. None of his

cited comments from lawmakers, however, are sufficient to overcome the plain language of the statute. Further, while it may be true that some legislators appear to have been concerned primarily with situations involving actual stealing (i.e. situations where the offender had no authority or permission from the "victim" to use the means of identification, lawful or otherwise), Congress did not pass a statute criminalizing merely this type of narrowly defined theft offense.

On another level, Retana's argument is more complex. He argues, essentially, that his father had the power to grant lawful authority for Retana to use the father's social security number. He also appears to argue that even if the father lacked such power, the government failed to prove that Retana knew the use was without lawful authority. We address these arguments in more detail.

In United States v. Hines, 472 F.3d 1038 (8th Cir. 2007) (per curiam), the Eighth Circuit held that the use of another person's social security number to commit a qualifying felony, even with that person's permission, served as use "without lawful authority" in violation of § 1028A. Hines, 472 F.3d at 1040 ("Whether Hines used Miller's name without permission . . . or . . . obtained Miller's consent in exchange for illegal drugs, Hines acted without lawful authority when using Miller's identification."). Here, Retana's argument is based on the theory that Hines is not controlling because the Supreme Court's reasoning in Flores-Figueroa v. United States, 129 S. Ct. 1886 (2009), so severely undercut the rationale of Hines as to render Hines no longer good law. The district court disagreed and found itself still bound by Hines. In the alternative, the district court held that even if not bound by Hines, it believed the government proved Retana's violation.

We agree with the district court as to both points. Flores-Figueroa is material to our analysis, but it did not undermine the authority of Hines in the manner urged by Retana. The Court in Flores-Figueroa held the term "knowingly" in § 1028A(a)(1) modified the subsequent phrase "of another person." 129 S. Ct. at 1888. Accordingly,

-4-

to prove the offense of aggravated identity theft, the government had to prove that the defendant knew the means of identification was associated with an actual person rather than being purely fabricated. Id. at 1894. Here, it is undisputed that Retana knew he was using his father's identification. The question remains, however, whether the term "knowingly" applies to the phrase "without lawful authority." We believe that it does.

In discussing whether the term "knowingly" modified the phrase "of another person," the Flores-Figueroa Court observed that "[a]s a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to *all* the subsequently listed elements of the crime." 129 S. Ct. at 1890 (emphasis added). The Court also relied on Liparota v. United States, 471 U.S. 419 (1985), in which it interpreted a federal food stamp statute that said, "'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [law]' is subject to imprisonment." Flores-Figueroa, 129 S. Ct. at 1891 (quoting Liparota, 471 U.S. at 420 n.1). The Liparota Court held that "the word 'knowingly' applied to the phrase 'in any manner not authorized by [law]' . . . despite the legal cliche 'ignorance of the law is no excuse.'" Id. (quoting Liparota, 471 U.S. at 433). Thus, Liparota and Flores-Figueroa support the conclusion that a conviction for aggravated identity theft requires proof that the defendant knew his use of the other person's identity was without lawful authority.

This conclusion, however, does not undermine Hines. Hines did not discuss the applicable mens rea. Hines held that the use of another person's social security number for an illegal purpose satisfied the statute as a use "without lawful authority" regardless of whether that use occurred with or without the other person's permission. Hines, then, stands for the simple proposition that the person assigned a particular social security number does not possess the lawful authority to authorize other persons to represent that number as their own in order to commit other crimes. Here, even after applying the mens rea requirement as per Flores-Figueroa and Liparota, it

remains true that Retana's father did not possess lawful authority to excuse Retana's fraudulent use of the father's social security number to commit other crimes.

To the extent Retana argues that the government failed to prove he knew the father's permission was insufficient, Retana's argument is a mere challenge to the sufficiency of the evidence. Retana waived his right to a jury trial, and the district court, as the finder of fact, is afforded the same deference we owe juries. See United States v. Peterson, 632 F.3d 1038, 1041 (8th Cir. 2011). Given Retana's particular and furtive uses of the father's social security number, and given the fundamental unreasonableness of the assertion that his father could grant lawful authority for such uses, it is clear that the district court's determination is supported by sufficient evidence. See, e.g., United States v. Mobley, 618 F.3d 539, 547–48 (6th Cir. 2010) ("That a defendant's use of any social security number—including his own—to submit fraudulent credit applications must be 'without lawful authority' is obvious.").

III.

We affirm the judgment of the district court.

_____