RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0031p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

        *v.*                                                              No. 12-1209

NATHAN LUMBARD,
                              *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cr-388-1—Robert Holmes Bell, District Judge.

Argued: December 5, 2012

Decided and Filed:  February 7, 2013

Before:  MARTIN and BOGGS, Circuit Judges; and COLLIER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Anastase Markou, LEVINE & LEVINE, Kalamazoo, Michigan, for Appellant. Jennifer L. McManus, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Anastase Markou, LEVINE & LEVINE, Kalamazoo, Michigan, for Appellant. Clay Stiffler, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

        COLLIER, District Judge. Whether purchasing personal information from its possessor for subsequent use in fraudulent activity constitutes aggravated identity theft within the purview of 18 U.S.C. § 1028A(a)(1) is the key issue in this appeal.  Appellant

_____

        [*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

Nathan Lumbard ("Lumbard") argues it is not, and also argues his sentence is procedurally and substantively unreasonable. Finding neither argument has merit, we **AFFIRM** the district court's judgment.

I

On June 24, 2009, Lumbard was arrested by state authorities in Michigan on two warrants, which included charges of breaking and entering, destruction of a building, and larceny. He was released on a $100,000 bond. Other outstanding warrants charged Lumbard with aggravated battery, obstruction of justice, receiving stolen property, and other crimes. In July 2009, a St. Joseph County Sheriff's Deputy attempted to arrest Lumbard pursuant to another warrant, but Lumbard fled on foot and successfully evaded arrest.

After eluding capture, Lumbard was introduced to Justin Cheesebrew by a mutual acquaintance who believed the two resembled one another. Lumbard contacted Cheesebrew to discuss purchasing his driver's license. During this conversation, Lumbard agreed to purchase Cheesebrew's driver's license, social security number, and birth certificate for $500. However, when Lumbard actually purchased the information, Cheesebrew merely told him his birth date and social security number and did not provide Lumbard with his social security card or his birth certificate. He did, however, respond to Lumbard's questions about his place of birth and identifying information about his parents.

Lumbard used the information to apply for a driver's license and obtain a copy of Cheesebrew's birth certificate at the Ingham County Clerk's Office. He also submitted an application for a United States Passport in Cheesebrew's name, using the driver's license and birth certificate he obtained from the Ingham Clerk as proof of identification. Lumbard listed Cheesebrew's information for all portions of the passport application except for the address to which the passport would be sent, where he listed his father's address. He paid a fee for his application to be expedited, and received a passport with Cheesebrew's information, but his own photograph, in August 2009. He

flew from Los Angeles, California to Tokyo, and later traveled to Thailand and Burma. Before leaving for Tokyo, Lumbard placed a suitcase with an attached suicide note on a bridge near Cairo, Illinois. He left a voice mail for a St. Joseph County Sheriff's deputy explaining they would find him shortly and they could "kiss [his] cold, white, wet a\*\*." Authorities searched the river near the bridge where the suicide note was found for Lumbard's body.

In January 2011, Lumbard was located by the U.S. Department of State Diplomatic Security Service in Burma. They informed Burmese officials that Lumbard was traveling under an assumed name and requested authorities arrest him. Burmese officials arrested him in January 2011 and returned him to United States custody. According to a field report prepared by the Diplomatic Security Service, Lumbard told Burmese officials to transport him to Bangkok rather than the United States, and attempted to stab a Burmese officer with an improvised knife when they refused. Lumbard was then escorted by some twenty Burmese officers to the airport, with Lumbard screaming he was being kidnapped. Lumbard claims he attempted to stab the Burmese official because he wanted to be charged in Burma, which would have prevented his extradition.

Once back in the United States, Lumbard informed officials he fled to avoid facing the criminal charges against him. He also informed officials of his exchange with Cheesebrew. On December 16, 2010, Lumbard was indicted for falsely representing information in an application for a passport and knowingly providing false identifying documents in violation of 18 U.S.C. § 1542. He was also indicted for using the name, social security number, date of birth, and driver's license of another person to obtain a passport in violation of 18 U.S.C. § 1028A(a)(1) and (c)(7), which criminalizes aggravated identity theft. Lumbard moved to dismiss the second count, which the district court denied. Lumbard then pleaded guilty to the charges but reserved the right to appeal the district court's denial of his motion to dismiss the aggravated-identity-theft charge. Pursuant to the United States Sentencing Guidelines ("USSG"), the district court determined Lumbard's offense level was 10 and his criminal history category was II,

which resulted in a guidelines range of 8–14 months in prison on count one and a mandatory two-year consecutive sentence on count two.  The court granted the government's motion for an upward departure pursuant to USSG § 4A1.3, and increased Lumbard's offense level to 14.  The initial Guidelines fine range was $2,000 to $20,000, but the Probation Office concluded Lumbard did not have the ability to pay a fine.  After the court departed upward, Lumbard's new Guidelines fine range was $4,000 to $40,000.  The district court sentenced Lumbard to 24 months on both counts to be served consecutively for a total of 48 months.  The court also assessed a $30,000 fine.

On appeal, Lumbard argues the district court erred in denying his motion to dismiss the count of aggravated identity theft.  He also argues his sentence is procedurally and substantively unreasonable.

II

Lumbard alleges he should not have been convicted of violating 18 U.S.C. § 1028(a)(1) as a matter of law.  This is a question of statutory interpretation, and "'[a] matter requiring statutory interpretation is a question of law requiring de novo review.'" *Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011) (quoting *United States v. Brown*, 639 F.3d 735, 737 (6th Cir. 2011)).

Lumbard also argues the imposition of a $30,000 fine was procedurally and substantively unreasonable.  This court applies a plain-error standard of review where, as here, a defendant fails to raise a claim during the sentencing procedures.  *United States v. Mahon*, 444 F.3d 530, 532 (6th Cir. 2006); *United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004).  In *Bostic*, we created a rule under our supervisory powers requiring district courts to ask the parties if they have any objections to the sentence pronounced. *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004).  A party must object with a reasonable degree of specificity to adequately preserve an objection. *Id.* at 871.  Where the objection is not sufficiently articulated, this court will review for plain error.  *Id.* at 872.

The plain-error inquiry is a four-step process under Rule 52(b) of the Federal Rules of Criminal Procedure:

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Mahon*, 444 F.3d at 533.

The question of whether a sentence is substantively reasonable is determined using an abuse-of-discretion standard of review. *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). "When conducting this review, the court will, of course, take into the account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. This court gives district courts considerable discretion in this area and they "deserve the benefit of the doubt when we review their sentences and the reasons given for them." *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008).

III

Section 1028A of Title 18 of the United States Code imposes a sentence of two years of imprisonment on a defendant who "during and in relation to a felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." Lumbard argues the phrase "without lawful authority" excludes cases, such as this one, where a defendant obtains a person's consent to use his or her information unlawfully; that is, Lumbard urges we take the section title "Aggravated Identity Theft" literally and read the statute to require actual theft. We touched briefly on the issue in *United States v. Mobley*, 618 F.3d 539 (6th Cir. 2010), but it was not squarely before us there. Many of our sister circuits have heard this issue and concluded the statute is not limited to instances of actual theft.

*See United States v. Spears*, 697 F.3d 592 (7th Cir. 2012); *United States v. Ozuna-Cabrera*, 663 F.3d 496 (1st Cir. 2011); *United States v. Retana*, 641 F.3d 272 (8th Cir. 2011); *United States v. Abdelshafi*, 592 F.3d 602 (4th Cir. 2010); *United States v. Carrion-Brito*, 362 F. App'x 267 (3d Cir. 2010); *United States v. Hurtado*, 508 F.3d 603 (11th Cir. 2007), *abrogated in part on other grounds by Flores-Figueroa v. United States*, 556 U.S. 646 (2009); *United States v. Hines*, 472 F.3d 1038 (8th Cir. 2007).

Lumbard argues, however, the Supreme Court recently limited § 1028A to instances of theft in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). *Flores-Figueroa* analyzed whether the government must prove a defendant charged with violating § 1028A knew that the means of identification he used belonged to a real individual. A circuit split had developed between courts that held § 1028A did not require a defendant know the information he misuses belongs to a real individual, rather than just being fake information, *e.g.*, *United States v. Mendoza-Gonzalez*, 520 F.3d 912 (8th Cir. 2008), and courts that concluded the statute required such knowledge, which would be more appropriately called "theft," *e.g.*, *United States v. Godin*, 534 F.3d 51 (1st Cir. 2008).

The Supreme Court agreed with the latter view, and concluded § 1028A requires the government prove a defendant knows the identifying information he misuses belongs to a real individual. *Flores-Figueroa*, 556 U.S. at 657. After concluding "knowingly" must, as a matter of grammatical logic, extend to the phrase "of another person," the Court analyzed the statute's legislative history and highlighted Congress's intent to target identity theft rather than simply identity fraud. The Court also considered the distinction between 18 U.S.C. § 1028, which prohibits fraud in connection with identification documents, and § 1028A, at issue here, which targets identity theft. *Id.* at 655.

Lumbard argues at length *Flores-Figueroa* must control our decision here. Before *Flores-Figueroa*, Lumbard notes, those circuits that held in favor of the government's position did so by implicitly or explicitly rejecting the view § 1028A meant to target theft; on the other hand, the circuits with whom the Supreme Court

agreed in *Flores-Figueroa* based their conclusion on § 1028A's focus on theft, rather than mere fraud. *Compare Hurtado*, 508 F.3d at 608 (holding, because the phrase "without lawful authority" in § 1028A is broader than the word "stolen" in 18 U.S.C. § 1028, § 1028A's reach must be broader than theft crimes), *and Mendoza-Gonzalez*, 520 F.3d at 916 ("Congress clearly intended identity theft to be read generically."), *with United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1243 (D.C. Cir. 2008) ("Congress intended section 1028A(a)(1) to single out thieves—in the traditional sense of the word—for enhanced punishment."). Lumbard suggests, when the Supreme Court chose sides in *Flores-Figueroa*, it concluded that § 1028A only applied to instances of theft and does not apply to cases where a defendant has permission to misuse another's identifying information.

We agree with the Eighth Circuit that, although *Flores-Figueroa* is "material to our analysis," it did not answer the question currently before us. *Retana*, 641 F.3d at 274-75. *Flores-Figueroa* analyzed § 1028A to determine the *mens rea* required for commission of the offense, which is not at issue here. The Court's focus on fraud versus theft is instructive, but not determinative. Rather, our task is to determine the meaning of the phrase "without lawful authority" and whether it includes instances where an individual gives his identifying information to a defendant with permission to misuse it. We conclude § 1028A is applicable to such cases.

Whenever we consider "[a] matter requiring statutory interpretation[,] . . . the starting point for interpretation is the language of the statute itself." *Roberts*, 655 F.3d at 582. With respect to the plain language of the statute, Lumbard relies primarily on the word "theft" in the title of the statute and the fact that the statute refers specifically to the identifying information of "another person."[1] Requiring the information belong to

---

[1] After oral argument, Lumbard brought a recently decided case by the Fourth Circuit to our attention pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure. In *United States v. Hilton*, 701 F.3d 959 (4th Cir. 2012), the Fourth Circuit analyzed whether "person" as used in § 1028A includes corporations. Although the statute uses the word "person," the phrase "means of identification" as defined by the statute includes the term "individual." The court noted the Dictionary Act, 1 U.S.C. § 1, defines "person" to include corporations but does not define "individual." In light of this ambiguity, the court applied the rule of lenity and vacated the defendants' convictions in light of "two plausibly valid interpretations." Lumbard urges we similarly apply the rule of lenity here. However, *Hilton* analyzes a very different issue from the one we consider today, and we do not conclude that the phrase "without

another person, Lumbard reasons, means the lawful authority must also be provided by that person, rather than by a governmental entity.[2] The government, on the other hand, points to the use of the phrase "lawful authority" rather than "permission" and argues the former was chosen to encompass broader activity than the latter. Further, the statute also prohibits transferring, possessing, or using a means of identification, which encompass more than just "theft." The government also notes that Lumbard's reading of the statute would prevent the prosecution of individuals who lawfully possess identifying information, such as a creditor who obtains an applicant's social security number, but then unlawfully misuse the information.

"[W]hen the text of a statute contains an undefined term, that term receives its ordinary and natural meaning." *In re Carter*, 553 F.3d 979, 986 (6th Cir. 2009). Black's Law Dictionary defines "lawful" rather tautologically as "not contrary to law," and defines "authority" as "[t]he right or permission to act legally on another's behalf." Black's Law Dictionary 152 & 965 (9th ed. 2009); *see also Ozuna-Cabrera*, 663 F.3d at 498-99. Neither of those words is confined to permission. Rather, one could have lawful authority without permission, such as a parent who obtains a passport for a child who stubbornly refuses to accompany the family on summer vacation. Similarly, as is the case here, one could have permission to use an individual's identifying information, but that permission itself does not confer lawful authority to misuse the information. To strain the parent-child example, even if the child gives permission to his mother to use

---

lawful authority" is sufficiently ambiguous to apply the rule of lenity.

[2] At oral argument, counsel for Lumbard focused almost exclusively on the distinction between § 1028A(a)(1), the section at issue, and § 1028A(a)(2), which immediately follows it. Subsection (2) is nearly identical to subsection (1), except that the underlying felonies are listed in a separate statute, 18 U.S.C. § 2332b(g)(5)(B), and, in addition to prohibiting the use of a "means of identification of another person," it prohibits the use of a "false identification document." Counsel argued that the omission of "false identification document" from subsection (1) suggests it was intended to target theft, and not mere fraud, and that Lumbard should have been charged under subsection (2). We typically do not consider arguments not made in a party's brief, *see, e.g.*, *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 450 n.6 (6th Cir. 2008), but we note the indictment for the instant offense charged Lumbard with using Cheesebrew's name and social security number, not simply with the use of a false license. *See* § 1028(d)(7) (defining "means of identification"). Moreover, whenever an identification document is offered, the offeror uses the information contained therein. If Lumbard had altered and misused Cheesebrew's actual license, for instance, he could still have been guilty under subsection (1), because he would have used Cheesebrew's information, including his name and possibly his social security number. Whether such use was "without lawful authority" is the question we currently face, but our analysis of that question is not altered by Lumbard's new argument.

his information in, for example, a fraudulent credit application, the mother has not acted with "lawful authority" even with the child's permission. That is true both because its use is still "contrary to law" and because the permission has not afforded "the right or permission to act legally" on the child's behalf. Because § 1028A only applies when the information is used in connection with one or more of the enumerated felonies, permission will never be sufficient to avoid its application.

Lumbard also points to § 1028A's legislative history in support of his interpretation. He relies heavily on the following passage from *Flores-Figueroa*:

> The relevant House Report refers, for example, both to "identity theft" (use of an ID belonging to someone else) and to "identity fraud" (use of a false ID), often without distinguishing between the two. *See, e.g.*, H.R. Rep. No. 108–528, p. 25 (2004), U.S. Code Cong. & Admin. News 2004, pp. 779, 788 (statement of Rep. Coble). And, in equating fraud and theft, Congress might have meant the statute to cover both—at least where the fraud takes the form of using an ID that (without the offender's knowledge) belongs to someone else.
> On the other hand, Congress separated the fraud crime from the theft crime in the statute itself. The title of one provision (not here at issue) is "Fraud and related activity in connection with identification documents, authentication features, and information." 18 U.S.C. § 1028. The title of another provision (the provision here at issue) uses the words "identity *theft*." § 1028A (emphasis added). Moreover, the examples of theft that Congress gives in the legislative history all involve instances where the offender would know that what he has taken identifies a different real person. H.R. Rep. No. 108–528, at 4–5, U.S. Code Cong. & Admin. News 2004, pp. 779, 780–81 (identifying as examples of "identity theft" "'dumpster diving,'" "accessing information that was originally collected for an authorized purpose," "hack[ing] into computers," and "steal[ing] paperwork likely to contain personal information").

556 U.S. at 655. Although Lumbard points to this passage to indicate theft must be proved in § 1028A cases, he also fails to recall that the Court concluded "the statute's history . . . is inconclusive." *Id.* Further, the examples he stresses of "dumpster diving" and "hacking into computers" do little to support his argument. While these examples may reflect Congress's heightened concern for the ignorant victim, the House Report also focuses on the threat posed by the concealed identity of terrorists and explained

"[t]he terms 'identity theft' and 'identity fraud' refer to all types of crimes in which someone wrongfully obtains and uses another person's personal data." H.R. Rep. No. 108-528, at 4; *see also Ozuna-Cabrera*, 663 F.3d at 500. Indeed, the report discusses an instance when a woman worked under her husband's social security number while she was receiving disability benefits. H.R. Rep. No. 108-528, at 6. The legislative history to some degree is "inconclusive," as recognized by the Supreme Court, *Flores-Figueroa*, 556 U.S. at 655, but suggests at least a secondary focus beyond simply protecting victims of identity theft. In any event, such "inconclusive" legislative history does not impeach our understanding of the plain text.

Our reading of § 1028A is consistent with our decision in *United States v. Mobley*, 618 F.3d 539 (6th Cir. 2010), where we analyzed § 1028A as applied to a husband who submitted fraudulent credit applications using his wife's information. Although our analysis was brief, due to the lack of clarity in the appellant's argument, we concluded that "a defendant's use of *any* social security number–including his own–to submit fraudulent credit applications must be 'without lawful authority.'" *Id.* at 547-48. Further, six other circuits to hear this issue have concluded that § 1028A extends beyond mere theft. *See Spears*, 697 F.3d at 599; *Ozuna-Cabrera*, 663 F.3d at 501; *Retana,* 641 F.3d at 275; *Abdelshafi*, 592 F.3d at 610; *Carrion-Brito*, 362 F. App'x at 273; *Hurtado,* 508 F.3d at 608; *Hines*, 472 F.3d at 1040. Four of these circuits decided the issue after *Flores-Figueroa* was decided, and the Eighth Circuit later reaffirmed its pre-*Flores-Figueroa* conclusion. Accordingly, we conclude that the phrase "without lawful authority" in § 1028A is not limited to instances of theft, but includes cases where the defendant obtained the permission of the person whose information the defendant misused.

IV

Lumbard argues the imposition of a $30,000 fine was procedurally and substantively unreasonable because the district court did not state any factors it considered in imposing the fine, did not consider the Probation Office's conclusion he lacked ability to pay a fine, and exceeded the applicable Guidelines range by $10,000.

The first two of these objections relate to procedural reasonableness, and the third alleges substantive unreasonableness. Lumbard did not raise the procedural objections at sentencing when given an opportunity to do so, and accordingly we review the district court's sentence for plain error. *Mahon*, 444 F.3d at 532-33.

> In reviewing a sentence for procedural reasonableness,
>
> [a]n appellate court must determine whether the district court: "(1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range."

*United States v. Young*, 553 F.3d 1035, 1054 (6th Cir. 2009). Lumbard argues the court failed to articulate its reasons for imposing the fine and failed to discuss the § 5E1.2 factors.

As an initial matter, the court properly calculated the Guidelines range. The Guidelines called for an offense level 10 and a criminal history category II. The resulting Guidelines range was 8 to 14 months of imprisonment, followed by a mandatory, consecutive two-year term. The Guidelines also called for a fine between $2,000 and $20,000. Although the Probation Office stated Lumbard did not have the ability to pay a fine, it suggested a small fine was appropriate because Lumbard would be able to work while in custody and on supervised release. Accordingly, a fine of $2,000 was recommended. During the sentencing hearing, the court granted the government's motion for an upward departure pursuant to USSG § 4A1.3, and increased Lumbard's offense level to 14.

"Sentencing Guideline § 4A1.3(a)(4)(B) provides that, 'where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure,' the court 'should structure the departure by moving incrementally down the sentencing table to the next higher offense level in

Criminal History Category VI until it finds a guideline range appropriate to the case.'" *United States v. Herrera-Zuniga*, 571 F.3d 568, 574 n.3 (6th Cir. 2009). The court concluded an enhancement was appropriate under § 4A1.3 because Lumbard was on bail for other serious offenses when he committed the instant offense, he had eight pending criminal cases not accounted for in the Guidelines range, he absconded to a country not likely to extradite, and his criminal history evidenced a "penchant for serious criminal activity" and no respect for the law. Lumbard does not appeal this departure, and we conclude that the court adequately articulated its reasoning for departing from the advisory guidelines range. Based on the new offense level, Lumbard's Guidelines fine range was $4,000 to $40,000.

After hearing from counsel and affording Lumbard an opportunity to speak, the court then explained its concerns about Lumbard's conduct in the context of the 18 U.S.C. § 3553(a) factors:

> This serious offense requires a just punishment, but it requires an adequate deterrence, and that's probably the most problematic of the sentencing criteria which this Court must employ is what is going to be an adequate deterrence. I don't know. I don't know. This is a very difficult one.
> Suffice it to say that this Court's duty is to impose a sufficient sentence, but not greater than necessary to comply with the federal sentencing statute. And there is an old adage that every criminal sentence is an experiment in behavioral modification, and this is an experiment in behavioral modification because no one can get through to this intelligent young man until he opens his mind and lets someone get through and receives some counseling.

The court noted its primary purpose in Lumbard's sentence was to deter Lumbard from committing offenses in the future. The court properly considered the § 3553(a) factors and adequately articulated its reasoning for the sentence imposed.

However, "[i]n determining whether and to what extent to impose a fine, the district court must consider not only the § 3553(a) factors, but also the fine-specific factors set forth in 18 U.S.C. §§ 3571 and 3572, and U.S.S.G. § 5E1.2(d)." *United States v. Zakharia*, 418 F. App'x 414, 424 (6th Cir. 2011). Those factors include

defendant's income; earning capacity; financial resources; the burden on the defendant and his dependents; pecuniary loss inflicted on others as a result of the offense; whether restitution is ordered; the need to deprive the defendant of illegal gains; and the need to promote respect for the law, provide just punishment, and adequate deterrence.

*United States v. Tosca*, 18 F.3d 1352, 1354 (6th Cir. 1994) (citing 18 U.S.C. § 3572(a) and USSG § 5E1.2(d)).  Some circuits require a district court to make "explicit findings on the record" regarding these factors, but "we have indicated that detailed findings are not necessary where it can be inferred that the district court considered the defendant's ability to pay and other factors required by law."  *United States v. Powell*, 423 F. App'x 602, 610-11 (6th Cir. 2011) (citing *Tosca*, 18 F.3d at 1354-55).

The court adequately considered Lumbard's ability to pay and the other factors required by law.  After the Probation Office completed its investigation of Lumbard's finances, the government discovered Lumbard inherited property held in trust from his recently deceased grandmother.  The government offered a trust officer as a witness at the sentencing hearing, who testified to the appraised value of the properties.  There was a question regarding liabilities of the trust, stemming from Lumbard's decision to leave the country while released on bond, but the trust officer estimated approximately $20,000 would remain in trust after these claims were settled.  The court itself asked many questions of the trust officer regarding Lumbard's access and the status of the claims against the trust.

After considering the testimony of the trust officer, and hearing argument on the Guidelines from counsel, the court pronounced its sentence.  The court, in its colloquy with the trust officer and government counsel, extensively discussed Lumbard's assets and ability to pay.  The court then announced the fine:

A fine of $30,000 will be levied in this matter. It's to be paid within 30 days of commencing supervised release.  The U.S. Attorney has at its disposal the ability to place a lien on that property which I understand came out of trust and is to be adjudicated somewhere for Mr. Lumbard's benefit.  This Court will sign any orders which place a lien to that effect for $30,000.

Accordingly, "there was sufficient indicia of the court's consideration of [Lumbard's] ability to pay," and the court did not plainly err when it imposed the fine. *See United States v. Woods*, 367 F. App'x 607, 614 (6th Cir. 2010). This is particularly true where Lumbard "did not request more specific findings in the district court or carry [his] burden of putting forth evidence that [he] would not be able to pay [his] fine under the terms the court specified." Id.

Because the court properly calculated the Guidelines range, adequately articulated its reasons for departing from the Guidelines range, considered the § 3553 factors, and considered the fine-specific factors, we conclude the sentence was procedurally reasonable. *See Young*, 553 F.3d at 1054.

"If the sentence is deemed procedurally reasonable, we must then determine if it is substantively reasonable." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). Sentences are substantively unreasonable where "the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *Id.* A sentence within the applicable Guidelines range carries a rebuttable presumption of reasonableness. *Id.* However, "there is no presumption against a sentence that falls outside of this range." *Herrera-Zuniga*, 571 F.3d at 590. When we consider deviations from the Guidelines, "[t]his court has applied a form of proportionality review to sentences outside the Guidelines range, so that 'the greater the variance from the range, the more compelling the justification for variance must be.'" *Id.* (quoting *United States v. Tate*, 516 F.3d 459, 470 (6th Cir. 2008)). "Nevertheless, 'while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard.'" *Id.* at 590-91 (quoting *Gall*, 552 U.S. at 40).

Lumbard argues the fine was substantively unreasonable because it was $10,000 more than the initial Guidelines range called for and ignores his inability to pay. Although Lumbard notes the $30,000 fine was above the range in the initial Guidelines determination, it was within the post-departure Guidelines range, and he does not appeal

the four-level departure imposed pursuant to USSG § 4A1.3. Such a sentence may not carry the rebuttable presumption of an advisory Guidelines sentence, but the court's use of the revised Guidelines range clarifies the court's justification for the sentence imposed. And while we "may consider the extent of the [district court's] deviation, [we] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Johnson*, 640 F.3d 195, 209 (6th Cir. 2011) (quoting *Gall*, 552 U.S. at 51) (affirming an upward departure pursuant to USSG § 7B1.4).

We already concluded that the district court adequately explained its reasons for departing upward, and adequately considered the fine-specific sentencing factors, including ability to pay. The court instead focused on Lumbard's significant criminal history as well as his actions in the instant case, including his taunting of police and faking his own death. He then departed upward and considered Lumbard's sentence according to the appropriate sentencing factors. Accordingly, the court did not "choose[] the sentence arbitrarily, ground[] the sentence on impermissible factors, or unreasonably weigh[] a pertinent factor." *See Brooks*, 628 F.3d at 796. Therefore the district court did not abuse its discretion in imposing the $30,000 fine.

V

For the foregoing reasons, we affirm the judgment of the district court.