[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11386
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cr-00044-MW-CAS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE MALDONADO,
JENNIFER MALDONADO,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(March 2, 2018)

Before TJOFLAT, WILSON, and NEWSOM, Circuit Judges.

PER CURIAM:

Jorge Maldonado and his daughter, Jennifer Maldonado, were partners in a tax fraud scheme, for which they were convicted of multiple offenses.[1] They now appeal their conviction for aggravated identify theft, alleging that the district court erred by declining to adopt their requested jury instruction. Mr. Maldonado also appeals his 84-month sentence, arguing that the district court: (1) based his sentence on information that was not disclosed to him prior to sentencing; (2) relied on a false assumption that he had committed statutory rape; and (3) improperly enhanced his offense level for using sophisticated means.

Upon thorough review of the briefs and the record, we find that the Maldonados' proposed instruction was not a correct statement of Eleventh Circuit law, that the district court did not err in determining Mr. Maldonado's sentence, and that the sophisticated means enhancement was appropriate. Accordingly, we affirm the Maldonados' conviction and Mr. Maldonado's sentence.

## I.

We review a district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Yeager*, 331 F.3d 1216, 1222 (11th Cir. 2003). A court abuses its discretion if the requested jury instruction: "(1) was correct; (2) was not substantially covered by the charge actually given; and (3)

---

[1] These included: one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; eleven counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; two counts of theft of United States money, in violation of 18 U.S.C. §§ 641 and 2; and two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

2

dealt with some point in the trial so important that failure to give it seriously impaired the defendant's ability to conduct his defense." *Id.* at 1222–23.

Ordinarily, we review a district court's application of the guidelines de novo and its factual findings for clear error. *United States v. Gupta*, 572 F.3d 878, 887 (11th Cir. 2009). But where, as is the case here, the defendant failed to object to the procedural reasonableness of his sentence below, we review for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). To demonstrate plain error, the defendant must show that (1) there was error, (2) it was plain, (3) it affected his substantial rights, and (4) it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* We review the district court's determination that the offense involved sophisticated means for clear error. *United States v. Feaster*, 798 F.3d 1374, 1380 (11th Cir. 2015).

## II.

The aggravated identity theft statute provides, in pertinent part:

> Whoever, during and in relation to any felony violation enumerated in [§ 1028A(c)], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). "Thus, to support a conviction under § 1028A(a)(1), the government must prove that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful

3

authority; (4) during and in relation to a felony enumerated in § 1028A(c)." *United States v. Hurtado*, 508 F.3d 603, 606–07 (11th Cir. 2007) (per curiam) (footnote omitted), *abrogated on other grounds by Flores-Figueroa v. United States*, 556 U.S. 646, 129 S. Ct. 1886 (2009). In *Flores-Figueroa*, the Supreme Court clarified that Section 1028A(a)(1) "requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa*, 556 U.S. at 657, 129 S. Ct. at 1894.

The Maldonados argue that the third element of the offense, "without lawful authority," is ambiguous. According to their interpretation, it refers to whether the defendants used a means of identification of another person *without her consent*, not whether it was used during and in relation to one of the enumerated felonies. In other words, a consenting accomplice cannot serve as "another person" under the statute. And because they put forth evidence at trial that their "victims" were really consenting accomplices, they claim that the failure to deliver their instruction seriously impaired their ability to conduct a defense.

The district court did not abuse its discretion in refusing to give the Maldonados' instruction, because the instruction did not accurately state the law. *See Yeager*, 331 F.3d at 1222–23. The Maldonados' interpretation of § 1028A(a)(1) butts heads with our precedent. While it is true that use of another person's identity without her consent can constitute use "without lawful authority,"

4

we have not interpreted the statute so narrowly as to exclude other meanings of "without lawful authority," such as use of another's means of identification for an unlawful purpose. *See United States v. Zitron*, 810 F.3d 1253, 1260 (11th Cir. 2016) (per curiam) ("The government established the 'without lawful authority' element in two ways—with testimony from Jordan that Zitron did not have permission to use his identity, and with evidence that Zitron used Jordan's means of identification for an unlawful purpose."). This interpretation accords with the majority of our sister circuits, which also have refused to limit the "without lawful authority" element to the issue of consent. *See, e.g.*, *United States v. Ozuna-Cabrera*, 663 F.3d 496, 499 (1st Cir. 2011) ("[R]egardless of how the means of identification is actually obtained, if its subsequent use breaks the law—specifically, during and in relation to the commission of a crime enumerated in subsection (c)—it is violative of § 1028A(a)(1)."); *United States v. Reynolds*, 710 F.3d 434, 436 (D.C. Cir. 2013); *United States v. Retana*, 641 F.3d 272, 275 (8th Cir. 2011); *United States v. Mobley*, 618 F.3d 539, 547–48 (6th Cir. 2010); *United States v. Abdelshafi*, 592 F.3d 602, 608 (4th Cir. 2010). The district court correctly refused the Maldonados' instruction, and we affirm their conviction accordingly.

## III.

We now turn to Mr. Maldonado's claim that his sentence was procedurally and substantively unreasonable. First, he alleges that the district court relied upon

undisclosed information from Jennifer Maldonado's sealed PSI.  Second, he claims that the district court relied upon an erroneous assumption that he committed statutory rape.  Third, he argues that the district court clearly erred in applying the sophisticated means enhancement.

The district court commits reversible procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).   "The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the [PSI], or evidence presented at the sentencing hearing."  *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).  But the court must "give to the defendant and an attorney for the government a written summary of—or summarize in camera—any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information."  Fed. R. Crim. P. 32(i)(1)(B).

The Sentencing Guidelines provide for a two-level enhancement to a defendant's base offense level where the offense involved sophisticated means and "the defendant intentionally engaged in or caused the conduct constituting

6

sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). The Section 2B1.1 Application Notes define sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id*. cmt. n.9(B). This includes, for example, "hiding assets or transactions, or both, through the use of fictitious entities [or] corporate shells." *Id.* We have held that the enhancement was appropriate where an offense involved the creation of fraudulent mortgage documents, fake title corporations, use of straw buyers, and improper diversion of U.S. mail, *United States v. Rodriguez*, 751 F.3d 1244, 1258 (11th Cir. 2014); where an offense involved multiple companies and repetitive, coordinated activities to conceal it, *United States v. Bane*, 720 F.3d 818, 826–27 (11th Cir. 2013); and where a defendant hid assets and transactions through a straw man or campaign fund, *United States v. Campbell*, 491 F.3d 1306, 1316 (11th Cir. 2007).

Mr. Maldonado's first claim arises out of an exchange between his lawyer and the district court at the sentencing hearing. In response to a request for a downward variance based on Mr. Maldonado's devotion as a father, the district court commented that "the PSR and the attachments related to Jennifer Maldonado paint a very different picture," and that "the children claim he turned a blind eye when their stepmother, his wife, was abusing the children." Mr. Maldonado now

argues that it was error for the district court to rely upon this information, which was not provided to him prior to sentencing.

We find that the district court did not plainly err. As an initial matter, the record does not convince us that the district court relied upon any undisclosed information in determining Mr. Maldonado's sentence. At the conclusion of the sentencing hearing, the district court carefully explained its sentencing decision, recognizing Mr. Maldonado's *commitment* to his family, in addition to his service in the military, his clean criminal record, and his difficult upbringing, as mitigating factors warranting a downward variance ten months below the bottom of the guideline range.[2] Furthermore, the information at issue, including the abuse of the children by their stepmother, was the subject of witness testimony at trial; thus, the district court would not have been precluded from considering these facts at sentencing. *See Wilson*, 884 F.2d at 1356 ("The findings of fact of the sentencing court may be based on evidence heard during trial . . . ."). And even if we assume, arguendo, that the district court should have disclosed the information referenced from Jennifer Maldonado's PSI, we are not convinced that a failure to do so, under these circumstances, affected Jorge Maldonado's substantial rights or seriously

---

[2] The district court stated: "Mr. Maldonado did not abandon his children when the various mothers and so forth left, but instead he stood by. I take all of that into account as to a complete picture of who Mr. Maldonado is, where he's come from, and what he's done in spite of the fact that he had to overcome great hurdles."

affected the fairness, integrity, or public reputation of his proceedings. *Vandergrift*, 754 F.3d at 1307.

Turning to Mr. Maldonado's second argument, we find the claim that the district court relied upon a belief that he was a statutory rapist to be entirely unsupported by the record. Mr. Maldonado's claim arises out of an in camera discussion about a trial witness with whom Mr. Maldonado had a sexual relationship in Puerto Rico while she was under the age of 18. Mr. Maldonado's affair with the witness came up again at sentencing, where the parties disputed its legality. The district court emphasized: "I'm not here to sentence Mr. Maldonado because he allegedly had sexual relations with somebody. . . . I'm assuming for purposes of this sentencing proceeding, that the sexual relationship didn't start until after [the witness] was 18; let me make that crystal clear." Contrary to Mr. Maldonado's claim, the record demonstrates that the district court put aside the issue of the legality of his sexual relationship with the witness when determining his sentence, which we find to be procedurally reasonable.

Likewise, we find that the district court reasonably imposed the enhancement for using sophisticated means. The record demonstrates that Mr. Maldonado created fake powers of attorney and transposed legitimate notary seals onto fake documents; he obtained personal identifying information from multiple third parties; he used third parties to cash fraudulent checks in a different

9

jurisdiction; and he used legitimate tax preparation businesses to perpetrate and conceal the fraud. We find that the execution and concealment of the tax fraud involved sufficiently complex and intricate conduct to justify the sophisticated means enhancement, U.S.S.G. § 2B1.1 cmt. n.9(B), and, therefore, we affirm Mr. Maldonado's sentence.

## IV.

The district court did not err in refusing to give the Maldonados' requested jury instruction, nor did it err in fashioning Mr. Maldonado's sentence. Accordingly, we affirm.

**AFFIRMED.**