<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0248n.06

Case No. 18-5667

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 08, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| LOUIS L. MARTIN, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: SILER, GIBBONS, and DONALD; Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. Defendant Louis Martin was indicted by a federal grand jury on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Martin pled guilty to the indictment pursuant to a plea agreement and was sentenced to 120 months imprisonment and fined $3,000.00. Martin now appeals, contending his sentence was procedurally and substantively unreasonable. For the following reasons, we **AFFIRM** the sentence.

I.

On June 12, 2017, officers with the Lexington Police Department responded to a complaint that Sarah Williams had been assaulted and was being held against her will by Martin inside a Lexington apartment. When officers entered the apartment, they found Martin in the living room

in possession of a loaded firearm and Williams in a back bedroom with facial injuries. On December 7, 2017, Martin, who had previously been convicted of murder and robbery in the second degree, was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On March 5, 2018, Martin pled guilty to the count pursuant to a plea agreement.

Following the guilty plea, the United States Probation Office prepared Martin's Pre-Sentence Investigation Report ("PSR"), relying on the following facts: On the day of the incident, Tia Payne made an in-person report to officers that she had been present inside Williams' residence, with Martin and Williams, when Martin physically assaulted Williams. Payne told the police that Martin had a gun and was holding Williams against her will inside the residence and that Payne had been sent to get food for Martin. She also told the officers that Martin was threatening to shoot Williams in the head if law enforcement came into the residence. Payne informed officers that Martin was Williams' boyfriend and the father of Williams' unborn child and that Martin was a convicted murderer. Police officers accompanied Payne to the residence. Upon entry into the residence, officers found Martin sitting on a sofa in the living room and saw a handgun partially exposed at the base of the sofa. Officers then located Williams in the back bedroom. They noted that Williams was uncooperative and that she bore visible injuries to her forehead, bruising around one eye, and her face was swollen. Following the incident, the officers took Martin into custody.

On September 7, 2017, ATF agents met with and interviewed Williams. With respect to the injuries officers observed at the scene, Williams stated that she was "jumped" by three unidentified females in the parking lot of her residence. Throughout the interview, Williams denied that Martin had assaulted her, held her hostage, or pointed a firearm at her. Williams additionally told the ATF agents that Payne had been intoxicated when she reported the incident

to the officers, and that Payne had misunderstood what was occurring inside the apartment. She stated that Payne had not been inside the apartment on that date, prior to reporting the incident, but rather learned of the events through a phone call with Williams.

On September 11, 2017, ATF agents interviewed Payne. During the interview, Payne stated that when she spoke to the police, all she knew was that Williams was "hurt badly." She reported that she did not know how Williams received the injuries and that she did not see Martin assault Williams. She stated she could not recall what she had told officers on the date of the incident, but she wanted them to take the situation seriously. Payne added that she and Williams did not wish to see Martin prosecuted and that on the date of the incident she only wanted to remove Williams from the situation where Martin was hurting her. Due to the inconsistencies between her accounts, the agents concluded that Payne was attempting to protect Martin.

Based on these facts, the probation office found that Martin possessed a firearm in connection with the commission or attempted commission of another offense that was most analogous to unlawful imprisonment. The probation office applied U.S.S.G. §§ 2K2.1(c)(1)(A) and 2X1.1 to find that Martin's base offense was governed by § 2A4.1, which provides the base offense level for unlawful imprisonment. The probation office additionally found a two-point increase appropriate under § 2A4.1(b)(3) because Martin used a dangerous weapon—the firearm—to commit the unlawful imprisonment. The probation office calculated Martin's advisory guideline range to be 135 to 168 months of imprisonment, and then adjusted the sentence to 120 months to reflect the statutory cap established for a violation of 18 U.S.C. § 922(g)(1). The probation office also noted that due to the nature and circumstances of the offense and the history and characteristics of the defendant, a sentence outside of the advisory guidelines, particularly with respect to the imposition of a fine, may be warranted. Martin objected to the application of § 2A4.1

and to the two-point enhancement for the use of a dangerous weapon, contending that the factual record did not support the application of either.

In response to Martin's objections, the district court held a sentencing hearing. At the hearing, the government called Lexington Police Department Lieutenant Matt Brotherton, who testified about Payne's complaint on the day of the incident, the law enforcement's entry into the apartment, and the officers' interaction with Williams on that same day. The government also called ATF Special Agent Russel King, who testified about an in-person interview he conducted with Williams on September 7. Neither Williams nor Payne was called to testify. Following the testimonies and oral argument, the district court overruled Martin's objections to the PSR. The district court concluded that a confrontation had occurred between Martin and Williams wherein Martin assaulted Williams with a handgun, and further, that Williams had communicated to Payne what had happened prior to Payne approaching the police. The district court then found by a preponderance of the evidence, that Martin would be guilty of unlawful imprisonment in the first degree under Kentucky law and agreed that the PSR's recommended base offense level was correct.

The district court sentenced Martin to 120 months of incarceration and imposed a $3,000 fine with payment suspended during the term of incarceration and supervised release so long as Martin is fully compliant with his child support obligations. Martin objected to the district court's imposition of a fine, but the district court overruled the objection after making additional findings as to whether a fine was appropriate.

## II.

On appeal, Martin contends that the district court erred in calculating his offense level by applying USSG §§ 2K2.1(c)(1)(A), 2X1.1, and 2A4.1, and that it further erred by imposing a fine.

We review the imposition of criminal sentences under a deferential abuse of discretion standard, which consists of both a procedural and substantive component. *Gall v. United States*, 552 U.S. 38, 51 (2007). The same applies to the district court's imposition of a fine. *United States v. Blackwell*, 459 F.3d 739, 770 (6th Cir. 2006). We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). For a sentence to be procedurally reasonable, the district court must have "(1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *Id.* at 581. If a sentence is deemed procedurally reasonable, we then consider whether the sentence is substantively reasonable. "The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) (citing *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). The government bears the burden of establishing by a preponderance of the evidence facts that support an enhancement under the Guidelines. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014).

A.

Martin first contends that the district court's application of USSG § 2K2.1(c)(1)(A) to calculate his Guidelines range pursuant to USSG §§ 2X1.1 and 2A4.1 was procedurally unreasonable because the record does not contain sufficient evidence to support the application. USSG § 2K2.1 provides the appropriate offense level for violations of 18 U.S.C. § 922(g). The

probation office found that, in this case, application of USSG § 2K2.1 would result in an adjusted offense level of 24. However, under § 2K2.1(c)(1)(A), if the defendant used or possessed a firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, then the base offense level should be determined according to USSG § 2X1.1, provided the resulting offense level is greater than that determined under USSG §§ 2K2.1(a) and (b). Section 2X1.1(a) provides that the offense level should be calculated using "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." Finding that the firearm cited in the offense of conviction was possessed in connection with an offense most analogous to unlawful imprisonment under Ky. Rev. Stat. § 509.020, the probation office adjusted the offense level by applying USSG § 2A4.1 pursuant to 2K2.1(c)(1)(A). The probation office calculated the adjusted offense level to 34, which reflected a base offense level of 32 pursuant to USSG § 2A4.1(a) plus a two-point increase pursuant to USSG § 2A4.1(b)(3) for use of a dangerous weapon. Finding by a preponderance of the evidence that Martin had used the firearm during the unlawful imprisonment, the district court agreed with the probation office and found it appropriate to use USSG § 2A4.1 to calculate Martin's base offense level.

Martin argues that the record does not support the district court's findings of fact. We do not agree.

Martin relies largely on Williams' statement made three months after the incident in interviews with ATF agents. He points to the fact that Williams specifically denied that Martin assaulted her, held her hostage, or pointed a firearm at her, and that Williams said she felt free to leave the residence prior to law enforcement's arrival. He also cites Williams' statement that Payne was intoxicated when she spoke to police on the day of the incident and that Payne did not

witness first-hand what happened between Martin and Williams. Martin argues that Williams' statement to the ATF agents did not contradict any previous statements she made, and, as such, this was not a situation where the district court should have questioned Williams' credibility. Rather, Martin argues that the district court should have taken Williams' statement as true and disregarded Payne's earlier account of the incident.

While it is true that Williams denied each accusation against Martin, this is not enough to overcome the evidence that supports the district court's findings of fact. The district court properly considered the testimony of law enforcement officers, physical evidence regarding Martin's conduct on the day of the incident, and testimony and body camera footage of law enforcement's discussion with Payne when she first informed them about the incident. This evidence confirmed Payne's initial account of the situation, which led the district court to find Payne's initial account credible. Contrary to Martin's argument, William's statement to the ATF officers contradicts Payne's initial account and the evidence that supports it. Accordingly, it was appropriate for the district court to determine which version of the facts it found credible. The district court found Williams' statement to the ATF agents not credible, noting that her statements were inconsistent with all the evidence produced in the case. In doing so, the district court pointed to, among other things: the fact that Williams did not come forward to say that Martin had not assaulted her or held her hostage until she had a motive to do so—she was just weeks away from giving birth to Martin's child and she did not want Martin to be further penalized for his actions; the fact that the blood evidence in the residence did not support a finding that Williams was jumped in the parking lot; and the fact that Williams had made another unsubstantiated claim that the police had damaged the door upon entry into the residence. Accordingly, based on the record evidence, we cannot find that the district court committed clear error in its findings of fact.

Martin also contends that the district court's application of a two-level enhancement under USSG § 2A4.1(b)(3) was procedurally unreasonable because the record does not contain sufficient evidence to support the enhancement. However, Martin again relies on Williams' statement to show that there was insufficient evidence in the record to support the enhancement. For the same reasons stated above, this argument fails.

B.

Martin next contends that the $3,000.00 fine was substantively unreasonable because the district court unreasonably weighed factors such as potential educational opportunities, future employment prospects and earning capacity, child support obligations, and the burden on his family. The guidelines provide that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a); *see also United States v. Kennedy*, 578 F. App'x 582, 595-96 (6th Cir. 2014). "'[I]n determining whether and to what extent to impose a fine, the district court must consider not only the § 3553(a) factors, but also the fine-specific factors set forth in 18 U.S.C. §§ 3571 and 3572, and USSG § 5E1.2(d).'" *United States v. Lumbard*, 706 F.3d 716, 726 (6th Cir. 2013) (quoting *United States v. Zakharia*, 418 Fed. App'x 414, 424 (6th Cir. 2011)). Those factors include:

> [The] defendant's income; earning capacity; financial resources; the burden on the defendant and his dependents; pecuniary loss inflicted on others as a result of the offense; whether restitution is ordered; the need to deprive the defendant of illegal gains; and the need to promote respect for the law, provide just punishment, and adequate deterrence.

*Id.* (citing *United States v. Tosca*, 18 F.3d 1352, 1354 (6th Cir. 1994)). The defendant carries the burden of showing that he does not have the present or future ability to pay a fine. *See United States v. Blanchard*, 9 F.3d 22, 25 (6th Cir. 1993) (citing 18 U.S.C. § 3664(d)).

Under the guidelines, the probation office calculated Martin's fine range to be between $30,000.00 and $250,000.00. At sentencing, the district court found that Martin would not be able to pay a fine within that range, and instead imposed a fine of $3,000.00. Martin objected to the imposition of the fine, arguing that the record contains no evidence to support a finding that he has or will have the ability to pay the fine. The district court overruled the objection, noting that "while [Martin] has limited earning capacity, he certainly has the ability to pay a fine, especially considering the fact that the fine would not be incurred until he's on supervision, and the Court is recommending vocational training programs. And hopefully when he is released, he will be able to do so."

On appeal, Martin points to several factors to show his inability to pay, including: that he has spent most of his adult life in prison, which will make it difficult for him to find a job upon release; that he does not have any assets; and that he will, upon release, be required to pay child support. These arguments do not carry Martin's burden of showing an inability to pay the fine. The district court concluded that Martin would be able pay the fine in the future because he will be able to work upon release from prison. Difficulty in finding a job because of his convicted felon status does not establish that Martin will not be able to pay the fine in the future. Further, though he claims he will also have child care payments to make, Martin has not shown that the amount of the fine is so overwhelming that he would not be able to pay. Accordingly, we find that the district court did not abuse its discretion by imposing the fine.

For the foregoing reasons, we **AFFIRM** the district court's sentence.